UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| Thomas Seagroves and Ute Seagroves, | ) ) ) | |
| Plaintiffs, | ) ) | CV-13-1183-PHX-DJH |
| vs. | ) ) | Phoenix, Arizona September 17, 2014 |
| Eli Lilly and Company, an Indiana corporation, | ) ) ) | 9:58 a.m. |
| Defendant. | ) ) ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

TELEPHONIC DISCOVERY HEARING

APPEARANCES:
For the Plaintiffs:
        Pogust Braslow & Millrood
        By:  T. MATTHEW LECKMAN, ESQ.
        161 Washington Street, Suite 1520
        Conshohocken, PA  19428

For the Defendant:
        Covington & Burling
        By: PHYLLIS A. JONES, ESQ.
        1201 Pennsylvania Avenue NW
        Washington, DC  20044

Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1        THE CLERK:  This is civil matter 13-1183, Seagroves,

2   et al., versus Eli Lilly and Company.  This is the time set for

3   a discovery hearing.  Counsel, please enter your appearances.

4        MR. LECKMAN:  Good morning, Your Honor.  This is Matt

5   Leckman here on behalf of the plaintiff.

6        THE COURT:  Good --

7        MS. JONES:  Oh, I'm sorry.

8        THE COURT:  Good morning, Mr. Leckman.

9        MS. JONES:  Good morning, Your Honor.  This is Phyllis

10  Jones on behalf of Eli Lilly and Company.

11       THE COURT:  Good morning, Ms. Jones.  What is the

12  nature of your discovery dispute, Ms. Jones?

13       MS. JONES:  Well, I believe Lilly initiated this

14  process, so I will just give the Court a brief set of

15  background on where we are.  And by way of very brief

16  background, this is a products liability action involving the

17  medicine Cymbalta where the plaintiff has alleged that he took

18  the medicine and experienced certain symptoms upon

19  discontinuing treatment.

20       Consistent with the guidance provided in the Court's

21  scheduling order from earlier this year, the parties submitted

22  a joint paper laying out what has been -- what has turned out

23  to be a longstanding issue related to the identification of the

24  doctor who originally prescribed Cymbalta to Mr. Seagroves.

25       Now, I believe that I can fairly represent to Your

UNITED STATES DISTRICT COURT

1    Honor that there is no dispute that Lilly is entitled to this

2    basic information.  But for reasons that have not been entirely

3    clear from our perspective, the plaintiff has not been able to

4    actually gather that information and make it available in

5    response to discovery.  And just to provide you with a brief

6    chronology of the history of our interactions up to this point

7    on the issue, the plaintiffs filed their complaint in this case

8    in June of 2013.  And there was an allegation in that complaint

9    that Mr. Seagroves had been prescribed Cymbalta by his

10   physician in 2004.

11           In January of 2014 Lilly served its first set of

12   interrogatories on the plaintiffs and requested among other

13   things the identification of the name of each physician who'd

14   prescribed Cymbalta to Mr. Seagroves.

15           We received responses from Mr. Seagroves which

16   identified a doctor named Grace Haynes, but upon collection of

17   the medical records for Dr. Haynes it became clear to us that

18   Dr. Haynes' treatment of Mr. Seagroves actually started in

19   2006, and therefore she was not the original 2004 prescriber.

20   So we went back to Mr. Seagroves' counsel by a letter in June

21   of 2014 and requested that he either supplement his responses

22   or amend his complaint if in fact his first prescription had

23   been in 2006.

24           We received in -- later that month in June of 2014 a

25   set of supplemental responses to Lilly's interrogatory requests

1    stating for the first time that Mr. Seagroves did not actually

2    remember the name or the location of his original prescriber

3    from 2004 and that he was obtaining insurance records to obtain

4    that information.

5            So that was as of the end of June.  We followed up

6    with Mr. Seagroves' counsel in July of 2014, July the 11th, and

7    inquired about the efforts of identifying the name of that

8    original prescriber from 2004.  We didn't receive a response

9    and sent a couple of follow-up notes throughout July.

10           At the end of July of this year, we received an e-mail

11   from Mr. Seagroves' counsel's office indicating that they had

12   asked for the insurance records and expected to receive those

13   records within the next week or two, and the expectation was

14   that those records would provide the name of the original

15   prescriber that would be responsive to Lilly's January

16   interrogatory request about who originally prescribed the

17   medicine.

18           We made a follow-up inquiry at the beginning of August

19   on where that stood after we hadn't received the information

20   within two weeks of the original representation by plaintiffs'

21   counsel's office that they expected to receive the records.

22   And by early August of this year, the representation that we

23   received from plaintiffs' counsel was that they still did not

24   have the information on the name of the original prescriber and

25   could not predict when that information would actually become

1    available.

2           There had been depositions set for both of the

3    plaintiffs in this case for September.  And when by end of

4    August of this year it became clear that we still had not

5    received the medical -- even the name of the original

6    prescriber and certainly not the records for the original

7    prescriber, plaintiffs' counsel made the suggestion that the

8    dates for those depositions be adjourned.  So we've now

9    rescheduled those depositions for the first part of October.

10          And having not been able to satisfactorily bring this

11   issue to a close after several months of e-mail correspondence

12   on the subject and several months after we made our original

13   request for what we viewed as being some basic responsive

14   information about the original prescriber, we indicated to

15   plaintiffs' counsel that we intended to raise this issue with

16   the Court.

17          We filed the paper with Your Honor obviously on

18   September the 8th and since that time have not received any

19   further information on the status of this issue.

20          So that's the history of how we got here.  The kind of

21   practical consequence of what has been at this point a

22   several-month-long discovery omission on the part of the

23   plaintiff is it's created some very real issues for moving

24   discovery forward.  We have currently a discovery end deadline

25   of December the 12th of this year, and to date there have not

1   been any depositions taken in part because we've been waiting

2   on this core set of records from the original prescriber whose

3   name has not yet been made available to us.  Our experts have

4   not had an occasion to review any of the records relating to

5   that initial prescription.  And it's effectively stalled the

6   progress of the depositions in the case.  And as we inch closer

7   and closer to the end of discovery, it frankly just created

8   some concern on our part that the parties are not going to be

9   in a position to complete discovery within the time frame that

10   the Court had originally proposed.

11          The relief we're seeking is one of two things.  One,

12   that there be some date certain articulated by the Court by

13   which the plaintiffs either need to make available to Lilly the

14   name of Mr. Seagroves' original prescriber so that we can go

15   ahead and collect the necessary medical records and complete

16   the necessary depositions and get our experts into a position

17   to meet the expert deadlines that the Court had set its

18   original scheduling order.  And if that's not possible, our

19   request has been that the plaintiffs be ordered to dismiss

20   their complaint without prejudice to their ability to refile it

21   once they have -- once they have identified the information

22   that supports this foundational claim that they've made that

23   Mr. Seagroves received Cymbalta in 2004.

24          And the reason -- This is not an issue on which we

25   were kind of itching to litigate before Your Honor, but our

1    concern is that given how long this issue has played out, that

2    if we allow it to continue too much longer, we're just going to

3    continue to be stalled in moving forward with the progress of

4    the litigation.  So that's Lilly's position and a history of

5    where we are.

6           We're obviously happy, to the extent Your Honor wants

7    it, to submit the related correspondence on this issue.  But

8    that's broadly speaking how we got to this point and what

9    relief we're seeking at this juncture.

10           THE COURT:  Thank you, Ms. Jones.  Mr. Leckman.

11           MR. LECKMAN:  Yes, Your Honor.  I think that by and

12   large accurately reflects the history of how we got here,

13   so-to-speak, with a couple of exceptions.  I think early on

14   counsel stated that for reasons that are unclear to Lilly,

15   we've been unable to acquire the insurance records, the billing

16   records.  I'd have to take issue with that.  I'd made clear all

17   along exactly what our intent was and what our process was and

18   what our efforts have been, unfortunately without success to

19   date.  I've told Lilly that I don't believe this is in dispute,

20   the parties are in agreement, that I want very much to find

21   billing records that would identify the original prescriber or

22   prescribers.  I don't think that substantively affects

23   discovery insofar --

24           THE COURT:  Well, Mr. Leckman, I have to agree with

25   Ms. Jones the clock is ticking, and you have specific deadline

1    obligations to meet.  You also have an array of depositions

2    that have to be taken in a time certain.  And it seems to me

3    that given the substance of the complaint, it's extremely

4    relevant as to who the original prescriber of the Cymbalta in

5    2004 is.  And it strikes me as odd not to have that information

6    or at least have access or to have thoroughly identified that

7    information at the time that you filed the complaint.

8         So I'm a bit concerned about the length of time it's

9    taken to uncover that information.  And it strikes me, in the

10   joint submittal of papers, Ms. Jones, it appears, has received

11   some HIPAA authorization forms that permit her client to

12   similarly seek out that information.  But it seems to me to be

13   a much easier task for you to complete.

14        MR. LECKMAN:  Your Honor, I don't disagree in the

15   least with the idea that the identity of the first prescriber,

16   prescribers, plural, and what that prescriber might say

17   under oath and that the content of the medical records are all

18   certainly relevant.

19        What I'm suggesting is there's no reason we couldn't

20   depose the second prescriber who absolutely existed and

21   prescribed Cymbalta and clearly from the nature of the records

22   for that second prescriber did not initiate on Cymbalta.  It's

23   clear that Cymbalta had already been being prescribed by some

24   prior entity or physician.  There's no dispute about that.

25   Substantively we absolutely had a basis to file the complaint.

1    The injuries relating to the use of Cymbalta, as Ms. Jones

2    pointed out, are injuries that onset at the discontinuation of

3    Cymbalta, not during treatment.  And those records we provided,

4    and it's been clear from the outset.

5              So I understand and I agree that they're relevant, and

6    I agree the clock is ticking.  The plaintiffs' depositions were

7    scheduled.  From our perspective we thought they could go

8    forward.  Defense counsel asked us to postpone them.  They

9    wanted to have the identity of the prescribers and have the

10   records, so I indulged that request, and we postponed them.

11             We are working, Your Honor.  I can assure Your Honor

12   we are working to collect the records as soon as we identify

13   this prescriber.  We've reached out to several Blue Cross

14   entities at this point through our third-party records

15   retrieval service which I think I identified in my papers.  We

16   continue to follow up with them on a daily basis.

17             We are confident that there is a prior prescriber or

18   prescribers.  We are confident in our client's representation

19   to us both before and after we filed the complaint that he

20   initiated Cymbalta in 2004.  I don't have any doubts about

21   that.  The only doubt that we have is who the prescriber was,

22   and we're absolutely working to find them.

23             THE COURT:  Mr. Leckman, in other words, what you're

24   doing is putting the onus on the defendant to depose the second

25   treating physician to uncover the identity of the original

1    treating physician.

2            MR. LECKMAN:  Well, no, I wouldn't say that, Your

3    Honor.  Either party --

4            THE COURT:  I mean, I think that's what it amounts to.

5    And under the circumstances and because the clock is ticking

6    and the Court intends to hold the parties to the scheduling

7    order, I'm inclined to agree with Ms. Jones that the Court may

8    need to set a date certain in which this information should be

9    provided.  And I'm not going to go so far as to agree today to

10   make an order that if that date is not complied with, that the

11   complaint is dismissed.  But certainly the defendants can bring

12   any motion it chooses.

13           I understand, Mr. Leckman, that you are trying to

14   uncover the documents, but I think we do need to set some firm

15   deadlines so that we can keep the case moving forward.

16           And I will then agree to set a deadline of providing

17   that information, the original treating physician, prescribing

18   physician, of the Cymbalta in 2004 to September 30th.  And you

19   make every effort to do so.  And let the Court know, Ms. Jones,

20   if you receive that information.

21           And if there are other suggestions in terms of how to

22   get that information, Mr. Leckman, please let Ms. Jones know.

23           If September 30th comes and goes without receiving

24   that information, I'll entertain a motion.  And certainly I'm

25   assuming that the parties in this matter are acting in

1    good faith.  But I think, Mr. Leckman, you have an obligation

2    to find that information and to turn it over.

3                 MR. LECKMAN:  Your Honor, may I be heard very briefly?

4                 THE COURT:  Very briefly.

5                 MR. LECKMAN:  I just entreaty the Court to extend us

6    to October 10th with your intent to set a date certain.  We

7    have a variety of other Cymbalta-related matters in other cases

8    that are pending, including an expert deadline next week.

9                 And I'd just ask the Court to indulge us in an extra

10   10 days on top of the 30 if the Court is so inclined.

11                THE COURT:  Ms. Jones, did you reset your depositions?

12                MS. JONES:  The depositions are currently set for

13   October the 7th and the 8th, so I think even assuming a world

14   in which we get the name on September the 30th, it's unlikely

15   we will have been in a position to have collected all of the

16   records in advance of those depositions.  So I expect that

17   those will move again.

18                I will say, for what it's worth, Your Honor, I don't

19   think we have any objection to the ten days in addition that

20   Mr. Leckman has requested.  But I think given Your Honor's

21   admonition that you intend to hold the parties to the discovery

22   deadlines, we really can't -- we probably can't wait too much

23   longer in that because there is a process by which the records

24   have to be collected, and that can sometimes be slowed by how

25   quickly you can actually identify the location of the records

1    and then get them successfully subpoenaed.

2           THE COURT:  I will then set the deadline to turn that

3    information over to October the 10th at close of business,

4    5:00, and we'll go from there.  Thank you, counsel.

5           MR. LECKMAN:  Your Honor, I thank you for the

6    consideration, the indulgence.

7           THE COURT:  Thank you.

8           MS. JONES:  Thank you, Your Honor.

9        (Proceedings recessed at 10:16 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3          I, LINDA SCHROEDER, do hereby certify that I am duly

4   appointed and qualified to act as Official Court Reporter for

5   the United States District Court for the District of Arizona.

6          I FURTHER CERTIFY that the foregoing pages constitute

7   a full, true, and accurate transcript of all of that portion of

8   the proceedings contained herein, had in the above-entitled

9   cause on the date specified therein, and that said transcript

10  was prepared under my direction and control.

11         DATED at Phoenix, Arizona, this 18th day of September,

12  2014.

13

14                               s/Linda Schroeder
                          Linda Schroeder, RDR, CRR
15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT