Alan Blankenheimer (SBN 006164)
Covington & Burling LLP
9191 Towne Center Drive
6th Floor
San Diego, CA 92122-1225
Tel: (858) 678-1801
ablankenheimer@cov.com

Michael X. Imbroscio (*pro hac vice*)
Phyllis A. Jones (*pro hac vice*)
Brett C. Reynolds (*pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
mimbroscio@cov.com
pajones@cov.com
breynolds@cov.com

Attorneys for Defendant
Eli Lilly and Company

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| THOMAS SEAGROVES and UTE SEAGROVES,<br><br>Plaintiffs,<br><br>vs.<br><br>ELI LILLY AND COMPANY, and Indiana corporation,<br><br>Defendant. | No. CV-13-01183-PHX-DJH<br><br>**OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER** |

DC: 5635130-7

No. CV-13-01183-PHX-DJH

Over a year ago, this Court put in place its Scheduling Order granting a generous period for discovery before the deadlines for disclosing experts, but the Court made it clear to the parties that "The Deadlines Are Real" and further that "the Court intends to enforce the deadlines set forth in this order, and they should plan their litigation activities accordingly." *See* ECF No. 26 (Jan. 10, 2014). Indeed, the Court's Order starkly warned the parties of the consequences for failing to meet these deadlines without substantial justification:

> 12. Dismissal for Failure to Meet Deadlines of This Order or of the Rules. The parties are warned that failure to meet any of the deadlines in this order or in the Federal Rules of Civil Procedure without substantial justification may result in sanctions, **including dismissal of the action or entry of default.**

*Id*. When considering the issue of whether Plaintiffs had adequately disclosed Mr. Seagroves' treating physicians in September 2014, the Court again cautioned the parties during a telephonic discovery conference that "the Court intends to hold the parties to the scheduling order." ECF No. 39 at 10:6-7.

Without acknowledging the Court's stern warnings either in the original Scheduling Order or at the September 2014 discovery conference, the Plaintiffs have filed a motion to extend all deadlines by 90 days. The Plaintiffs have filed this motion on the day they were due to name their experts (which itself was two weeks beyond the Court's original deadline owing to Lilly's courtesy to afford them a short extension that would not impact any other deadline). Plaintiffs' stated reason: the expert they had planned to use in this case, Dr. Henry Lahmeyer, is no longer available because of a "serious medical condition." Plaintiffs do not specify the nature of Dr. Lahmeyer's condition nor present any substantiation of his illness. Nor do Plaintiffs explain why they waited to raise this issue with the Court until two weeks after the Court's initial deadline, especially when by their own admission they initially became aware of the expert's medical issues back in December 2014 and conclusively determined "by

January 27th" that he would not be able to proceed in this case. Evincing the same lack of diligence that has already merited the Court's admonition (ECF No. 26) and Lilly's motion for fees (ECF No. 48), Plaintiffs cannot meet the exacting standards for setting aside the Court's scheduling order. Plaintiffs' motion should be denied.

## FACTUAL BACKGROUND

The Court entered the Scheduling Order in this action on January 10, 2014. *See* ECF No. 26. After some difficulties in obtaining the basic information necessary to investigate Plaintiffs' claims, Lilly sought the Court's intervention, which ultimately resulted in Lilly being able to complete the necessary discovery to prepare for expert disclosures. See ECF No. 26.

On February 9, 2015, less than two weeks prior to the deadline for Plaintiffs' expert disclosures, Plaintiffs' counsel contacted counsel for Lilly to ask for a three-week extension of the Plaintiffs' February 20, 2015 expert deadline. *See* Declaration of Brett Reynolds ("Reynolds Decl.") Ex. 1 (Feb. 9, 2015 Email from Kevin O'Brien to Phyllis Jones). Out of professional courtesy and because it would not disrupt the remainder of the Court's schedule, Lilly agreed to allow Plaintiffs an extra two weeks, making Plaintiffs' expert reports due on March 6, 2015. *See* Reynolds Decl. Ex. 2 (Feb. 12, 2015 Email chain between Kevin O'Brien to Phyllis Jones). Lilly did not seek a corresponding extension of its own expert disclosure deadline, so its expert reports remained, and, indeed, still remain, due on March 20, 2015.

In making their request, Plaintiffs' counsel assured Lilly that they were not seeking the alteration or extension of any other deadlines other than for the service of Plaintiffs' expert reports. *See* Reynolds Decl. Ex. 1 and 2. (Notably, the versions of these emails attached to Plaintiffs' motion cut off the earlier portion of these email chains reflecting Plaintiffs' assurance that no other deadlines would be impacted.) Despite that assurance a month earlier, just <u>two days</u> prior to the new deadline for Plaintiffs' expert disclosures, counsel for Plaintiffs contacted Lilly's counsel on March 4, 2015 to seek Lilly's assent for a <u>90-day</u> extension of all of the remaining deadlines in

the Scheduling Order. *See* Reynolds Decl. Ex. 3 (March 4, 2015 Email from Harris L. Pogust to Phyllis Jones). Lilly's counsel informed Plaintiffs' counsel that Lilly could not agree to the 90-day extension in light of this Court's admonition that it would hold the parties to the Scheduling Order and that Plaintiffs had not meaningfully explained the need for such a lengthy extension, or for their delay in requesting it. *See* Pogust Decl. Ex. B, ECF No. 59-5 (March 5, 2015 Email from Phyllis Jones to Harris L. Pogust).

In their motion for a 90-day extension, Plaintiffs assert that their planned expert, Dr. Lahmeyer, is now unavailable due to an unspecified medical condition, and they seek the extra time to provide their substitute expert, Dr. Joseph Glenmullen, time to review the materials in this litigation. Plaintiffs suggest to the Court that, in the immediate wake of the realization of Dr. Lahmeyer's incapacity on January 27, 2015, Plaintiffs diligently sought out a new expert to fill his place: "In an effort to mitigate these circumstances and comply with the Court's scheduling order, Plaintiffs' counsel immediately responded and successfully retained a new specific causation expert, Dr. Joseph Glenmullen, for this litigation and the two California cases." Mot. at 4. In reality, Dr. Glenmullen has been Plaintiff counsel's Cymbalta expert since at least August of 2013, when he filed a Declaration in a related class action pending in California. *See* Reynolds Decl. Ex. 4. Moreover, Dr. Glenmullen had actually been retained in "the two California cases" **at least six months earlier**, issuing an expert report in those cases on September 22, 2014. *See* Reynolds Decl. Ex. 5.

By their own application, Plaintiffs attest that they first knew about Dr. Lahmeyer's medical condition back on December 7, 2014. Indeed, it was on the eve of his obligation to sit for depositions in the two California cases that Plaintiffs' counsel notified Lilly on December 8, 2014 that Dr. Lahmeyer was not well enough to testify at his scheduled December 11, 2014 depositions. *See* Reynolds Decl. Ex. 6 (December 8, 2014 Letter from Harris L. Pogust to Michael Imbroscio). Plaintiffs in those two cases initially sought to substitute another expert for Dr. Lahmeyer, who they represented could be readied for deposition in less than two weeks. *See id.* After further discussion,

however, Lilly and Plaintiffs' counsel agreed instead that Lahmeyer would be produced for deposition once he was well, in 2015. *See* Reynolds Decl. Ex. 7 (December 8, 2014 Email from Phyllis Jones to Harris L. Pogust). After additional inquiries from Lilly's counsel about a deposition date in those two cases, and still having been provided no detail about Dr. Lahmeyer's illness, Plaintiffs' counsel indicated <u>on January 27, 2015</u> that Dr. Lahmeyer would not be able to serve as an expert in those two California cases. *See* Reynolds Decl. Ex. 8 (January 27, 2015 Email from Harris L. Pogust to Phyllis Jones). At that time, Plaintiffs' counsel did not indicate that they planned to use Dr. Lahmeyer in *Seagroves* or that his purported incapacity might upset the existing Scheduling Order in this case.

Despite apparently concluding no later than January 27 that they would not use Dr. Lahmeyer as an expert in this matter, Plaintiffs' counsel neither notified Lilly nor the Court of this potential problem. Instead, counsel waited until February 9 to request only a short extension, explaining that they were "getting [their] new expert up to speed." *See* Reynolds Decl. Ex. 1. Although Dr. Glenmullen had been an expert for Plaintiffs' counsel for over a year and a half and has had free access to all of Lilly's discovery for at least a year, Plaintiffs submit that Dr. Glenmullen could not cope with "the enormity of the task at hand" of preparing a specific causation report for Mr. Seagroves. Mot. at 4. Plaintiffs make this representation to the Court without mentioning that the entirety of medical records for Mr. Seagroves produced in this case necessary to render a specific causation opinion constitutes 232 pages. *See* Reynolds Decl. ¶ 11.

Among other factors apparently inhibiting Dr. Glenmullen from "getting up to speed" is his planned overseas travel beginning in mid-March: "Dr. Glenmullen's schedule is similarly hampered by other professional responsibilities and a previously scheduled, three-week European travel commitment commencing March 18th." Mot. at 4. This statement directly contradicts what Plaintiffs' counsel represented to the District Court in California in its motion to substitute Dr. Glenmullen for Dr. Lahmeyer, where Plaintiffs' counsel proposed specific causation expert reports in both cases on March 15

and promised availability for deposition shortly thereafter.[1] *See* Reynolds Decl. Ex. 9. (citing Plaintiffs' motion: "Dr. Glenmullen has been hard at work and will be prepared to serve a supplemental report by March 15, 2015 and provide his deposition testimony shortly thereafter."). Lilly is taking up this representation with the District Court in California as well. *Id.*

## ARGUMENT

A schedule may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Various factors are relevant to determining whether a party has satisfied the good cause standard, but the "focus of the inquiry is upon the moving party's reasons for seeking modification," and "if [the moving party is] not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992). Secondarily, courts also assess the degree of prejudice to the opposing party in their good cause calculus, although the prejudice inquiry is not the touchstone: prejudice to the party opposing modification can "supply additional reasons to deny a motion." *Id.* (emphasis added). Importantly, absent a showing of good cause, courts may deny requests for modification of the scheduling order regardless of the effect on the plaintiff's case. *See id.* (affirming district court's denial of a motion to modify the scheduling order to add an additional defendant after the joinder deadline had passed even though the denial resulted in summary judgment against plaintiff). As the *Johnson* court explained, "The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of Johnson's case. Disregard of the order would undermine the court's ability to control its

---

[1] Plaintiffs' *ex parte* motions to substitute Dr. Glenmullen for Dr. Lahmeyer in the District of California cases are pending, and Dr. Glenmullen has not been permitted by the Court to submit case-specific expert reports in those cases, which are set for trial May 5, 2015.

docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson*, 975 F.2d at 610.

### A. <u>Plaintiffs Have Not Made a Showing of Good Cause or Diligence.</u>

Plaintiffs' lack of diligence in attempting to adhere to the long-established Scheduling Order in this case is plain from the timing of events articulated in Plaintiffs' motion itself. Having first learned that Dr. Lahmeyer had medical problems no later than December 7, 2014, and having conclusively determined no later than January 27, 2015, that Dr. Lahmeyer could not serve as Plaintiffs' expert in this case, Plaintiffs did not immediately contact Lilly or notify the Court. Instead, they apparently quietly tasked their existing expert Dr. Glenmullen to take on this additional job. Not until thirteen days later did Plaintiffs ask Lilly for a few extra weeks to complete their expert reports, but even at that time assured Lilly that no other deadlines would be affected. Presumably, before making this specific request for an extension, Plaintiffs consulted with Dr. Glenmullen in determining how much additional time he thought he would need. Indeed, failing to consult an expert to determine whether he could actually complete his report on the schedule set forth by the Court would itself be a stunning lack of diligence. To "hope" to meet deadlines set forth in a binding scheduling order, even "naively," as Plaintiffs remarkably put it, reflects the complete opposite of diligence.

In the face of this record, waiting until the last day to seek the Court's intervention is even more inexcusable. *See Escandon v. Los Angeles County*, 584 Fed. Appx. 517, 519-20 (9th Cir. 2014) (filing request for extension on last possible day is factor against finding "good cause" for extension). If Plaintiffs knew prior to March 4, 2015 that they would need additional time for Dr. Glenmullen to write an expert report in this case, they should have raised the issue with Lilly and the Court when they knew it rather than waiting until the day of the deadline itself. *See Johnson*, 975 F.2d at 609 (moving party must be "diligent in seeking amendment of the Rule 16 order, once it bec[o]me[s] apparent that [the moving party] c[an] not comply with the order"). And if, on the other hand, implausibly, Plaintiffs did not learn until Wednesday, March 4, 2015

that Dr. Glenmullen could not complete his report by that Friday, and in fact needed not just two more days to finish his report but an additional 90 days, then Plaintiffs' failure to adequately manage the case schedule and their retained experts should not be rewarded. *See id.* ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.").

Moreover, where movants seek to modify a scheduling order for health reasons, courts generally require the party to support the claim with specific evidence regarding the nature of the condition and its effect on that party. *See, e.g., Meneweather v. Powell*, No. 07-2404, 2012 WL 3670698, at *2 (N.D. Cal. 2012) (denying plaintiff's motion to continue pretrial document deadlines for the plaintiff's alleged health condition where "[p]laintiff d[id] not attach any supporting medical documentation to his motion"); *Park v. CAS Enters., Inc.*, No. 08-cv-385, 2009 WL 4057888, at *2 (S.D. Cal. Nov. 19, 2009) ("At a minimum . . . [the ill expert] sh[ould] provide a letter from his treating physician stating the nature of his medical condition and if, in that doctor's opinion, [he] can serve as an expert witness."). Absent a persuasive explanation for the modification and the party's demonstration of diligence in seeking the extension, courts routinely deny requests like this one. *See, e.g., Meneweather*, 2012 WL 3670698, at *2 (denying request to modify scheduling order because plaintiff "presented an unsubstantiated, conclusory claim that he suffers from a medical condition that is preventing him being able to present his case and meet the aforementioned Court deadlines").

B. **Plaintiffs Overstate the Amount of Work Required to Complete Their Expert Reports.**

In an effort to bolster their contention that there is "good cause" for delay, Plaintiffs complain of "voluminous" materials and "thousands of pages" of medical records and other documents. Plaintiffs' Motion at 4.

The reality of the task facing Dr. Glenmullen is not so complex. *First,* although Plaintiffs do not state it in their motion, it appears that Dr. Glenmullen was already slated to serve as a general causation expert for Plaintiffs in this litigation. Indeed, based

on precisely the same document discovery produced in this case, Dr. Glenmullen has already drafted and served a 41-page expert report (not including appendices) in the two pending California cases. *See* Reynolds Decl. ¶ 7. The general causation issues in this litigation are precisely the same as those in the pending California cases, and a general causation expert's report does not involve plaintiff-specific considerations. Much of Dr. Glenmullen's task, therefore, is already complete.

*Second*, even with Dr. Glenmullen's recent designation as a case-specific (or "specific causation") expert, the additional work necessary to develop opinions about Mr. Seagroves is fairly circumscribed. Lilly's counsel has counted only 232 pages of medical records that have been produced in this case, in addition to deposition testimony of Mr. and Mrs. Seagroves and two of Mr. Seagroves' healthcare providers. *See* Reynolds Decl. ¶ 13. That relatively light volume — in a context where experts routinely receive thousands of pages of detailed and highly technical information — would hardly take several months to review. The overall approachability of the task facing Dr. Glenmullen is also apparent when measured by the reports in other, related cases of the expert that Dr. Glenmullen is evidently going to replace, Dr. Lahmeyer. In the two pending California cases, Dr. Lahmeyer's "specific causation" reports totaled 8 and 13 pages, respectively, with most of that volume consisting of a summary of the plaintiff's medical history. *See* Reynolds Decl. ¶ 14. Even assuming that Dr. Glenmullen was not retained to testify as to "specific causation" in this case until January 27, 2015, Dr. Glenmullen has now had approximately six weeks to review the 232 pages of medical records and four depositions in this litigation, and to draft a report which, if consistent with Dr. Lahmeyer's reports, will be about 8-15 pages long. There is no reason that task could not have been completed in the six weeks before the (extended) expert deadline, and it certainly does not require 90 additional days.

*Finally*, the foregoing assumes that Dr. Lahmeyer had not done any work related to this matter before it became clear on January 27, 2015, that he would not be able to serve as an expert. Assuming that is true, and that Dr. Lahmeyer had not yet begun to

review records relating to Mr. Seagroves, then Plaintiffs' counsel and Dr. Lahmeyer himself must have anticipated that he could complete his entire review of the relevant records and draft a report in the mere 25 days between January 27, 2015 and the originally-scheduled February 20, 2015 due date. On the other hand, assuming that Dr. Lahmeyer *had* done some initial work related to his report in this case, that is work that Dr. Glenmullen should be able to leverage in making his own work in developing his opinions more efficient. In either case, to push back every remaining scheduled date by 90 days is simply unreasonable.

### C. The Collection of Additional Medical Records from Previously Unidentified Providers Does Not Justify Plaintiffs' Lack of Diligence.

Plaintiffs' final swipe — untethered to any law explaining its relevance — is that it is "ironic" that "Lilly continues [to] request discovery *months* following the December 12, 2014 discovery deadline," and that Lilly has "requested and taken depositions almost a month following the discovery deadline." Plaintiffs' Motion at 5-6. As an initial matter, Plaintiffs simply misstate what has actually occurred.

First, as to the single deposition (not "depositions" as Plaintiffs assert), Lilly sought permission from this Court without objection for a limited exception to the discovery period in which to take the deposition of Plaintiffs' medical provider, Physician Assistant Andrew Fabrizius, because Mr. Fabrizius did not show up on the date for which he was initially subpoenaed. *See* ECF Nos. 55 (Lilly's motion) and 57 (Order granting motion). Mr. Fabrizius's initial disregard of a deposition subpoena hardly reflects any lack of diligence or fault on Lilly's part.

Second, as to Lilly's supposedly late and improper discovery requests, Lilly has simply sought Plaintiffs' consent to collect records from providers whose identities have surfaced after the close of discovery despite Plaintiffs' obligation to identify them during the discovery period. Specifically, well over a year ago, Lilly served interrogatories requiring Plaintiffs to identify Mr. Seagroves' medical providers. *See* Reynolds Decl. Ex. 10 at 5-6 (Lilly's First Set of Interrogatories to Plaintiffs). The records Lilly has

sought to collect are from providers that Plaintiff should have identified in his discovery responses, but Lilly only found out about after scouring the records it had collected to date and seeing references to these additional provides. Plaintiffs' basic failure to provide central medical information has plagued this case from the beginning, as the Court is aware, and remains the subject of Lilly's motion for fees. ECF No. 48.

At bottom, Plaintiffs do not and cannot explain how Lilly's diligence in collecting records from medical providers that Plaintiffs have failed to identify in contravention of their discovery obligations would somehow justify Plaintiffs decided lack of diligence in meeting perhaps the most important deadline in the Court's Scheduling Order. Most fundamentally, neither the collection of the additional records not previously identified nor Mr. Fabrizius's deposition have affected the Court's Scheduling Order, which presents a far different situation than what Plaintiffs seek in this motion.

## **CONCLUSION**

From the beginning, this Court has made it unmistakable that "The Deadlines Are Real." Plaintiffs and their counsel were on full and fair notice that "failure to meet any of the deadlines" in the Court's Scheduling Order "without substantial justification may result in sanctions, ***including dismissal of the action or entry of default.***" Despite this stark warning, Plaintiffs and their counsel have been decidedly cavalier in their adherence to their discovery obligations and the sanctity of the Court's deadlines. Because this records reflects a remarkable absence of diligence and good cause that would provide "substantial justification" for a 90-day extension of all remaining deadlines in this litigation, Plaintiffs' motion should be denied, and if they cannot produce an expert report immediately, this case should be dismissed with prejudice.

| | | |
|---|---|---|
| 1 | DATED this 11th day of March, 2015. | Respectfully Submitted, |

By:   /s/ Brett C. Reynolds
Phyllis A. Jones (*pro hac vice*)
Michael X. Imbroscio (*pro hac vice*)
Brett C. Reynolds (*pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000
pajones@cov.com
mimbroscio@cov.com
breynolds@cov.com

Alan Blankenheimer (SBN 006164)
Covington & Burling LLP
9191 Towne Center Drive
6th Floor
San Diego, CA 92122-1225
Tel: (858) 678-1801
ablankenheimer@cov.com

Attorneys for Defendant
Eli Lilly and Company

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2015, I electronically transmitted the foregoing Opposition to Plaintiffs' Motion to Modify Scheduling Order by CM/ECF filing on the following:

> David A. Wenner (AZ Bar No. 009886)
> Snyder & Wenner, P.C.
> 2200 E. Camelback Rd., Ste 213
> Phoenix, AZ 85016
> Tel: (602) 224-0005
> david@jurybias.com
>
> Harris L. Pogust (*pro hac vice*)
> T. Matthew Leckman (*pro hac vice*)
> Pogust Braslow & Millrood, LLC
> Eight Tower Bridge, Ste 1520
> 161 Washington Street
> Conshohocken, PA 19428
> Tel: (610) 941-4204
> hpogust@pbmattorneys.com
> mleckman@pbmattorneys.com
>
> Attorneys for Plaintiffs

/s/ Brett C. Reynolds